BYE, Circuit Judge,
with whom MORRIS SHEPPARD ARNOLD, Circuit Judge, joins, dissenting.
The First Amendment’s religion clauses stand as a bulwark to protect religion and, most importantly, religious freedom, “man-dat[ing] governmental neutrality between religion and religion, and between religion and nonreligion.” McCreary County v. ACLU,-U.S.-,-, 125 S.Ct. 2722, 2733, 162 L.Ed.2d 729 (2005) (quoting Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968)). “They embody an idea that was once considered radical: Free people are entitled to free and diverse thoughts, which government ought neither to constrain nor to direct.” Id. at 2746 (O’Connor, J., concurring). We enforce the clauses out of “respect for *779 religion’s special role in society,” id., recognizing “the relationship between government and religion is one of separation, but not one of mutual hostility and suspicion,” Van Orden v. Perry, — U.S.-, -, 125 S.Ct. 2854, 2869, 162 L.Ed.2d 607 (2005) (Breyer, J., concurring in judgment). Because this Ten Commandments monument, erected and displayed with the imprimatur of the City of Plattsmouth, abridges these ideals, I respectfully dissent.
The Ten Commandments monument belongs to Plattsmouth. It is located ten blocks from Plattsmouth’s City Hall, in Plattsmouth’s Memorial Park, and rests in a tranquil setting under shady trees on a grassy knoll between a recreation area and a road. Although the inscribed side faces the road, it is too far away to be read by passing motorists. Pedestrians, picnickers, and others using the park, however, have an unrestricted view of the Ten Commandments as written on the monument.
Nothing in the monument’s surrounds suggests its religious message might not be its raison d’etre. Plaques and nameplates in remembrance of, or in thanks to, various individuals adorn other park items as well as a wall by the main entrance to the park. Unlike the monument, however, these messages of thanks and recognition do not appear on well-known religious symbols nor are they accompanied by any religious text. The monument shares its environs with trees and recreational equipment but none of this mise-en-scéne reflects an intent to merely complement an otherwise secular setting by drawing upon one of the Ten Commandments’ secular applications. Rather, the monument’s stark religious message stands alone with nothing to suggest a broader historical or secular context.[9]
The majority, relying upon Van Orden, holds the monument “makes passive — and permissible' — use of the text of the Ten Commandments to acknowledge the role of religion in our Nation’s heritage.” Inasmuch as I respect “the strong role played by religion and religious traditions throughout our Nation’s history,” Van Orden, 125 S.Ct. at 2859 (Rehnquist, C.J., plurality opinion), I remain true to the concomitant principle that when government takes as its own an undeniably religious message, we must thoroughly “examine how the text is used,” id. at 2869 (Breyer, J., concurring in the judgment) (emphasis in original), “[a]nd that inquiry requires us to consider the context of the display.” Id.
In his opinion concurring in the judgment in Van Orden, Justice Breyer recognized, as does the majority, a display of the Ten Commandments can convey a historical message about the relationship between the standards inscribed thereon and our laws. Id. at 2869-70. He concluded this relationship “helps to explain the display of those tablets in dozens of courthouses throughout the Nation, including the Supreme Court of the United States.” Id. at 2870. The majority expands upon this principle by identifying other references to and representations of the Ten Commandments on government property, including the Library of Congress, the National Archives, the Department of Justice, the Court of Appeals and District Court for the District of Columbia, and the United States House of Representatives. See also id. at 2862-63 n. 9 (noting additional examples).
*780 Each of these examples, however, is distinguishable from the monument erected in Plattsmouth. Many earlier monuments and inscriptions appeared at a time when we “may not have foreseen the variety of religions for which this Nation would eventually provide a home.” McCreary, 125 S.Ct. at 2747 (O’Connor, J., concurring). Indeed, “for nearly a century after the Founding, many accepted the idea that America was not just a religious nation, but ‘a Christian nation,’ ” Van Orden, 125 S.Ct. at 2886 (Stevens, J., dissenting) (citing Church of Holy Trinity v. United States, 143 U.S. 457, 471, 12 S.Ct. 511, 36 L.Ed. 226 (1892)) (emphasis in original), and “many of the Framers understood the word ‘religion’ in the Establishment Clause to encompass only the various sects of Christianity,” id. at 2885. In today’s pluralistic America we no longer accept nor countenance such a narrow reading of the Establishment Clause.
The majorities’ examples of displays and inscriptions are further distinguishable because of the clear historical context in which they appear. For example, the oft noted image of Moses holding two tablets, depicted on the frieze in the Supreme Court’s courtroom, appears in the company of seventeen other lawgivers, both religious and secular. McCreary, 125 S.Ct. at 2741. Similarly, the depiction of Moses and the Ten Commandments on the Court’s east pediment also finds him in the company of renowned secular figures. Id. at 2741 n. 23. Such longstanding displays of the Ten Commandments in courtrooms and public buildings harken back to a time when the overwhelming majority of Americans espoused a Christian belief, and now serve as a historical reminder of those times and the relationship between the Decalogue and our laws. The religious message announced by these depictions is undeniable, but their long history and proximity to secular institutions founded upon many of the same basic principles, places them in a historical context not apparent to those viewing Plattsmouth’s display. Instead, the Plattsmouth monument stands alone with nothing to recommend it but its religious message.
Texas’s display of its Ten Commandments monument, while much like Platts-mouth’s monument, is surrounded by seventeen additional monuments and twenty-one historical markers “commemorating the ‘people, ideals, and events that compose Texan identity.’ ” Van Orden, 125 S.Ct. at 2858 (Rehnquist, C.J., plurality opinion) (citation omitted). Conversely, Plattsmouth’s monument rests alone among the park’s trees and recreational equipment in an area well-suited for reflection and meditation. See id. at 2870 (Breyer, J., concurring in judgment) (noting Texas’s monument was located in a setting poorly suited for meditation). Its location among donated park equipment and various plaques and nameplates does nothing to mute its undeniably religious message in favor of the secular and historical messages described by Justice Breyer. Id. at 2869-70. Indeed, though not mentioned by the majority, Plattsmouth expressly disavows any claim “that it displays the monument in order to show the secular role and influence of the Ten Commandments.” Appellant’s Br. at 6. Accordingly, there is nothing reflected in the context of this monument to suggest Plattsmouth intended a secular or historical message to predominate. See id. at 2870.
The majority eschews this distinction, suggesting the monument’s location, ten blocks from City Hall, obviates the need to contextualize its religious message. This goes well beyond the reasoning advanced in Van Orden’s fractured decision. At most, Van Orden holds a Ten Commandments display, incorporated into a larger *781 display of thirty-eight monuments and historical markers, will survive constitutional attack because it reflects a broad range of secular and religious ideals. Van Orden did not extend constitutional protection to Ten Commandments displays with no secular or historical message.
Nor did Van Orden reduce Establishment Clause jurisprudence to a simple mathematical calculation. It is not enough that Plattsmouth’s monument has stood for more than thirty-five years in Memorial Park. Without the contextualizing presence of other messages or some indicia of historical significance, there is nothing to free the display from its singular purpose of advancing its religious message. Because no such broader application is apparent — or for that matter offered — the monument violates the Establishment Clause.
For the foregoing reasons, I reject the majorities’ conclusion the monument stands simply “to acknowledge the role of religion in our Nation’s heritage.” The monument does much more than acknowledge religion; it is a command from the Judeo-Christian God on how he requires his followers to live. To say a monument inscribed with the Ten Commandments and various religious and patriotic symbols is nothing more than an “acknowledgment of the role of religion” diminishes their sanctity to believers and belies the words themselves. I respectfully dissent.

. The Eagles’ stated purpose in providing this and similar monuments was to “inspire all who pause to view them, with a renewed respect for the law of God, which is our greatest strength against the forces that threaten our way of life.” Van Orden, 125 S.Ct. at 2878 (Stevens, J., dissenting) (citation and quotations omitted).